IN IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CIARA KENDRA HARRISTON, et al., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-23-2795 |
| TARGET CORP., et al., | * | |
| Defendants. | * | |
| | *** | |

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Justin Bruner, Brian C. Cornell, Keri Deacon, Emily Herbert, Mariah King, Richard Kotras, Melissa Kremer, Kevin Lewis, Jermaine Martin, John Mulligan, Brandon Nickel, Mark Schindele, Rob Sexton, Samir Shah, Sarah Svoboda, and Target Corporation's (collectively, "Defendants") Partial Motion to Dismiss (ECF No. 69). [1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court

---

[1] There are several other pending motions in this case the Court will resolve here. The Court will grant self-represented Plaintiffs Ciara and Charrisa Harristons' Motion to Correct Name (ECF No. 67). The Clerk shall change the spelling of Defendant "Kerri Heard" to "Keri Deacon" on the docket. The Harristons' Motions for Leave to Amend (ECF Nos. 66, 72, 74), which Defendants oppose (ECF No. 82), will be denied because the Harristons have already supplemented and amended their Complaint, and any further amendments would be futile. See Equal Rights Center v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010) (explaining a district court may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile."). The Court further notes that Defendants filed a Motion to Dismiss the Harristons' original Complaint. (ECF No. 41). Because the Harristons subsequently filed an Amended Complaint (ECF No. 58), the Court will deny the first Motion to Dismiss (ECF No. 41) as Moot.

1

will grant Defendants' Motion.

## I. BACKGROUND[2]

### A. Factual Background

Self-represented Plaintiffs Ciara and Charrisa Harriston bring this suit alleging Defendants committed wide-spread civil rights violations stemming from Ciara Harriston's employment with Target. (See Am. Compl. at 9–29 ECF No. 58).[3] Charrisa Harriston is Ciara Harriston's mother and was never employed by Target. (Id. at 24). Although the allegations in the Amended Complaint mostly focus on how Target allegedly violated Ciara Harriston's civil rights, parts of the Amended Complaint expressly discuss Charrisa Harriston's involvement in this matter. (See, e.g., id. at 18). Accordingly, the Court refers to Ciara Harriston by name when the allegations relate only to Ciara Harriston, but to "the Harristons" when the allegations concern both Ciara and Charrisa Harriston.

On April 24, 2020, Ciara Harriston began working at Target in Pikesville, Maryland as a Visual Merchandiser. (Id. at 9, 13–14). The Harristons allege that Defendants demonstrated negligence in overseeing the conduct of Target employees and failed to

---

[2] Unless otherwise noted, the Court takes the following facts from the operative Complaint, (ECF No. 58), and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[3] The Court refers to page numbers in the Amended Complaint because the paragraphs repeat. Unless otherwise noted, citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

safeguard Ciara Harriston from racial discrimination[4] and retaliation during her employment at Target, ultimately "forc[ing] her out." (Id. at 12, 21).

Despite Defendants receiving citations from the Maryland Occupational Safety Commissioner and "pictorial evidence" from Ciara Harriston about her "unsafe cluttered workspace," which made it "unsafe and impossible for her to do her job," Defendants "faced no reprimand and were allowed to persist in their abuse" against Ciara Harriston. (Id. at 10, 16). The Harristons broadly allege that Defendants "were fully aware of Defendant Kevin Lewis' [Store Director] history of terminating or pressuring out employees who voiced complaints and knew about Ciara Harriston[']s reports of racial discrimination, retaliation and employee safety." (Id. at 11).

With respect to discrimination, Ciara Harriston alleges she was treated differently on account of her race by Defendant Richard Kotras, one of Ciara Harriston's supervisors,[5] because he (1) forced Ciara Harriston to clean a storage area alone; (2) refused to address Ciara Harriston in her title as a Visual Merchandiser, instead referring to her as "a lower-class employee repeatedly over the mic, over the pager and in front of other workers;" and (3) hired a non-African-American employee to replace Ciara Harriston before her employment was terminated, all without providing her with any written or verbal warnings. (Id. at 13–15).

---

[4] In the Amended Complaint, Ciara Harriston repeatedly alleges that Defendants treated "similarly situated Non-African American colleagues," differently than her, but fails to expressly identify her race. (See Am. Compl. at 13). In any event, Defendants thus far do not dispute that the Harristons belong to at least one protected class.

[5] The Harristons list Kotras' role as "ETL Specialty Sales." (Am. Compl. at 2).

With respect to retaliation and hostile work environment, Ciara Harriston alleges that on August 17, 2021, she submitted a complaint against Kotras to the store manager. (Id. at 14). A few days later, on August 23, 2021, Ciara Harriston emailed safety concerns to Melissa Kremer and Mark Schindele, both executives in Human Resources. (Id. at 2–3, 14). Soon after, Defendants removed Ciara Harriston from company emails and communications, group phone chats, company gatherings, district leadership updates, and denied Ciara Harrison's requests for time off. (Id. at 15). Ciara Harriston alleges she "suffered daily harassment and abuse after exercising a protected civil right." (Id.). The Harristons further allege that Justin Bruner, who oversees "ETL Assets Protection," "routinely watched and monitored [] Ciara Harriston on [the store's security] camera making her feel uncomfortable and impeding her ability to perform her work effectively." (Id. at 6, 15).

Ciara Harriston next alleges that on August 22, 2022, Kotras aggressively cut her off while she was driving in the company parking lot. (Id. at 17). That same day, she filed a complaint with Target's employee relations department about the incident, but Defendants ignored her complaint. (Id.). Ciara Harriston next alleges that on September 23, 2022, she was kidnapped from the Target store when a truck driver connected his vehicle to a trailer where she was working and drove off. (Id.). Ciara Harriston suffered both physical and emotional injuries as a result. (Id.). When she went to report the incident to Kotras, he replied "[w]ho stopped him?" (Id.). Defendants never investigated or followed up with Ciara Harriston about the incident and ordered her to continue working

in the same trailer, despite her submitting medical evidence demonstrating "traumatic stress relating to her kidnapping." (Id. at 17–18).

Ciara Harriston submitted a harassment complaint to Target's Employee Relation hotline asking for help with the kidnapping incident on October 18, 2022. (Id. at 18). After submitting these complaints, "clutter was intentionally placed in [Ciara Harriston's] workspace . . . and each time she was asked to clean it . . . the clutter was intentionally placed back." (Id. at 18-19). On September 28, 2022, Charrisa Harriston reported a workplace safety complaint concerning Ciara Harriston's workplace issues to the Maryland Occupational Safety and Health Administration ("Maryland OSHA"). (Id. at 18). On November 11, 2022, Ciara Harriston received corrective action for attempting to clean her cluttered workspace. (Id. at 19). On February 14, 2023, Ciara Harriston submitted a workplace safety complaint to Maryland OSHA. (Id.).

Generally, before the Harristons' complaints to store management and HR, Ciara Harriston received outstanding praise for her work and Defendants included her in team huddles and daily updates. (Id. at 20). After making these reports, however, Defendants excluded Ciara Harriston from team huddles and daily assignments, and her visual merchandizing displays were not shown. (Id.). Defendants ignored Ciara Harriston's "multiple cries for help." (Id. at 21).

With respect to her constructive discharge claim, the Harristons allege that Ciara Harriston was "mentally abused, isolated, threatened, bullied and harassed in an attempt to get her to leave." (Id.). Defendants used various "tactics" to "force" Ciara Harriston out, including "intentionally obstructing her workspace with excessive inventory, carts, and

5

containers, impeding her access to essential supplies, running her off the road, placing a broken ladder for her to use, and a bizarre and unexplained kidnapping." (Id.). The Harristons allege that "hostile environment, daily harassment, mental distress, threats, and [the] unexplained kidnapping [led] . . . Plaintiff Ciara Harriston to develop severe depression and severe anxiety," which "ultimately left her with no option but to resign from her position." (Id.). Defendants had knowledge of these issues because several Target stores in the area have been the subject of "many complaints of racism." (Id. at 22). The Harristons seek compensatory and punitive damages. (Id. at 27).

**B.     Procedural History[6]**

On October 16, 2023, the Harristons filed this lawsuit against Craig Bland, Justin Bruner, Brian C. Cornell, Kerri Heard, Emily Herbert, Mariah King, Richard Kotras, Melissa Kremer, Kevin Lewis, Jermaine Martin, John Mulligan, Brandon Nickel, Mark Schindele, Corey Schmidt, Rob Sexton, Samir Shah, Sarah Svoboda, and Target Corporation. (ECF No. 1). On March 25, 2024, the Harristons filed an Amended Complaint. (ECF No. 58). The six-count Amended Complaint alleges: discrimination in violation of 42 U.S.C. § 1981 (Count I); retaliation in violation of 42 U.S.C. § 1981 (Count II); negligent supervision (Count III); hostile work environment (Count IV); intentional infliction of mental distress (Count V); and constructive discharge (Count VI). (Am. Compl. at 26). On April 8, 2024, Defendants filed a Partial Motion to Dismiss. (ECF No. 69). The Harristons filed an Opposition to Defendants' Motion, (ECF No. 80), on May 5,

---

[6] Given the extensive procedural history of this case, the Court only recounts the pertinent procedural history necessary to resolve the pending motions at issue.

6

2024. On May 20, 2024, Defendants filed a Reply, (ECF No. 86), and on May 26, 2024, the Harristons filed a Motion for Leave to file Surreply, (ECF No. 88).[7]

## II. DISCUSSION

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[7] Though surreplies are generally not permitted, see Local Rule 105.2(a), the Court in its discretion may allow a party to file a surreply. EEOC v. Freeman, 961 F.Supp.2d 783, 801 (D.Md. 2013), aff'd in part, 778 F.3d 463 (4th Cir. 2015). This discretion is typically used in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs. See Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003), aff'd, 85 F.App'x 960 (4th Cir. 2004). Courts have also used this discretion to permit self-represented parties to file surreplies even where no new matters were raised in the reply brief. See Williams v. Bartee, No. CCB-10-935, 2011 WL 2842367, at *2 (D.Md. July 14, 2011) (permitting pro se party to file surreply that does not address new material but also does not "unduly prejudice defendants"), aff'd sub nom. Williams v. Merritt, 469 F.App'x 270 (4th Cir. 2012). Although Defendants oppose the Motion, the Court will grant the Harristons' Motion for Leave to File Surreply due to their pro se status. Further, the Court finds that because the arguments contained in the Harristons' Surreply do not change the outcome of its analysis below, Defendants will not be unduly prejudiced by them. Accordingly, the Court will grant the Motion, (ECF No. 88), and considers the Surreply below.

defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But "even a pro se complaint must be dismissed if it does not allege 'a plausible claim for relief.'" Forquer v. Schlee, No. RDB–12–969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (quoting Iqbal, 556 U.S. at 679). "While pro se complaints may represent

the work of an untutored hand requiring special judicial solicitude, a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them." Weller v. Dep't of Soc. Servs. for the City of Balt., 901 F.2d 387, 391 (4th Cir. 1990) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985)) (internal quotation marks omitted).

**B.     Analysis**

   **1.     Section 1981 Claims**

Defendants argue that the Amended Complaint fails to state a claim under 42 U.S.C. § 1981 against Brian C. Cornell, Melissa Kremer, Emily Herbert, John Mulligan, Mark Schindele, Brandon Nickel, Mariah King, Jermaine Martin, Rob Sexton, Samir Shah, Keri Deacon, Justin Bruner, and Sarah Svoboda (the "Pikesville Target Employees")[8] in their individual capacity. (Defs.' Mem. Supp. Partial Mot. Dismiss ["Mot. Dismiss"] at 8, ECF No. 69-1). For reasons explained below, the Court agrees.

Section 1981 provides, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Further, § 1981 "prohibits discrimination in employment on the basis of race." Gaines v. Balt. Police Dep't, 657 F.Supp.3d 708, 747 (D.Md. 2023) (quoting Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551–52 (4th Cir. 2006)).

---

[8] Defendants refer to this group of Defendants as the "1981 movants." (Mot. Dismiss at 6). For clarity, the Court will refer to these Defendants as the "Pikesville Target Employees," while acknowledging that the term "Pikesville Target Employees" is not inclusive of all employees the Harristons name in their Amended Complaint.

9

Section 1981 does not categorically bar claims against individuals. Instead, individual liability is permitted so long as a plaintiff demonstrates "some affirmative link to causally connect the actor with the discriminatory action" and the claim is "predicated on the actor's personal involvement." Hawthorne v. Va. State Univ., 568 F.App'x 203, 204–05 (4th Cir. 2014) (quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000)). In other words, the Fourth Circuit recognizes liability for individual supervisors only when "they intentionally cause an employer to infringe the rights secured by section 1981." Luy v. Balt. Police Dep., 326 F.Supp.2d 682, 688 (D.Md. 2004) (quoting Tillman v. Wheaton-Haven Recreation Ass'n, 517 F.2d 1141, 1145 (4th Cir. 1975)).

Here, the Harristons' § 1981 claims fail as to the Pikesville Target Employees because they do not plausibly allege that the Pikesville Target Employees "intentionally caus[ed]" an employer to infringe the rights secured by § 1981. Beyond conclusory allegations that the Pikesville Target Employees "neglected," failed to investigate, or "ignored" Ciara Harriston's complaints, (see Am. Compl. at 9–10; 22–23), the Harristons do not allege that the Pikesville Target Employees intentionally discriminated against Ciara Harriston on the basis of her race. Luy, 326 F.Supp.2d at 688.

Additionally, in cases where courts have found individual supervisors liable under § 1981, the supervisors were directly involved in the contested employment decision. See, e.g., Timbers v. Telligent Masonry, LLC, No. JKB-21-00293, 2022 WL 861849, at *7 (D.Md. Mar. 23, 2022) (finding plaintiff stated a claim under § 1981 for retaliatory termination where the individual defendant "recommended that [Plaintiff's] employment be terminated and drafted an Employee Disciplinary/Termination Form.").

The Amended Complaint here is devoid of any specific allegations of the Pikesville Target Employees involvement with Ciara Harriston's alleged constructive discharge, discrimination, or retaliation. As Defendants put it, "[u]ltimately, the Amended Complaint does not allege facts demonstrating that the [Pikesville Target Employees] alleged conduct was in any way related to Ciara Harriston's race or protected activity." (Defs.' Reply Mem. Supp. Defs.' Partial Mot. Dismiss ["Reply"] at 4, ECF No. 86).

In opposition, the Harristons contend that dismissal before discovery would "leav[e] all pertinent facts out of reach." (Pls.' Mem. Supp. Opp'n Defs.' Mot. Dismiss ["Opp'n] at 1, ECF No. 80). But "discovery does not serve as a tool to get basic facts to state a claim." Young v. Chase Home Fin., LLC, No. 2:14-CV-610, 2015 WL 12765022, at *3 (E.D.Va. Aug. 12, 2015) (quoting Cox v. MAG Mut. Ins. Co., No. 3:14-CV-377-JAG, 2015 WL 1640513, at *3 (E.D.Va. Apr. 9, 2015)); see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009) (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) ("[B]ut we need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions or arguments."). The Harristons' Surreply fares no better, offering only conclusory allegations that, for example, Target's "culture [is] characterized by dismissiveness, bullying, and a harsh lack of empathy." (Pls.' Reply Mem. Supp. Opp'n Defs.' Reply Mem. Mot. Dismiss ["Surreply"] at 2, ECF No. 88-1). In general, the Harristons launch a series of complaints directed at various Target staff, but none that plausibly allege the Pikesville Target Employees intentionally discriminated against Ciara Harriston due to her race. Without more, the Harristons' § 1981 claims against the

Pikesville Target Employees will be dismissed, although all other § 1981 claims the Harristons allege that Defendants did not move to dismiss, such as against Target itself, survive at this stage of the litigation.[9]

### 2. Negligent Supervision

Defendants next argue that the Harristons fail to state a claim of negligent supervision under 42 U.S.C. § 1986 ("Section 1986") as to all defendants. (Mot. Dismiss at 10). The Court agrees. Count III of the Harristons' Amended Complaint fails as to all Defendants because claims of negligent supervision based on employment discrimination are not actionable under Maryland common law.[10]

The Harristons allege that Defendants exhibited negligence by "allowing family and friends to work in the same location or to directly report to each other" thereby creating an

---

[9] In their Opposition, the Harristons appear to attempt to modify their Amended Complaint by adding claims against Sedgwick Workers Compensation Insurance Company. (Opp'n at 6). As Defendants correctly note, "[f]actual allegations that are not contained in the Amended Complaint should not be considered for purposes of evaluating Defendants' motion to dismiss." Zak v. Chelsea Therapeutics Int'l Ltd., 780 F.3d 597, 606 (4th Cir. 2015); (Reply at 3 n.1). Accordingly, the Court will not consider these additional allegations because no "litigant is exempt from the well-established rule that parties cannot amend their complaints through briefing or oral advocacy." Henderson v. City of Roanoke, No. 20-2386, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (quoting S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013)).

[10] In a federal question case that incorporates a state law issue, such as negligent supervision, a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise. See Johnson v. Carmax, Inc., No. 3:10–213, 2010 WL 2802478, at *2 (E.D.Va. July 14, 2010) (citing In re Merritt Dredging Co., 839 F.2d 203, 206 (4th Cir. 1988)). Under Maryland law, courts apply the substantive law of the state in which the contested employment decision occurred, State Auto. Mut. Ins. Co. v. Lennox, 422 F.Supp.3d 948, 961 (D.Md. 2019), which in this case is Maryland, (see Am. Compl. at 7–27). Accordingly, Maryland law applies. The Court will also apply Maryland law to the Harristons' intentional infliction of emotional distress claims.

"unfair work atmosphere and group harassment." (Am. Compl. at 12). The Harristons further allege Defendants were negligent because, among other things, they "failed to properly investigate" Ciara Harriston's "safety concerns," "overlooked numerous complaints of civil rights violations that [she] reported," and generally "failed to take any action." (Id. at 16).

To state a claim for negligent supervision under Maryland law, a plaintiff must plead facts "[showing] (1) that her injury was caused by the tortious conduct of a coworker; (2) that the employer knew or should have known by the exercise of diligence and reasonable care that the coworker was capable of inflicting harm of some type; (3) that the employer failed to use proper care in selecting, supervising, or retaining that employee; and (4) that the employer's breach of its duty was the proximate cause of the [p]laintiff's injuries." Rosa v. Bd. Of Educ. Of Charles Cnty., Md., No. 8:11-02873-AW, 2012 WL 3715331, at *5 (D.Md. Aug. 27, 2012).

Here, the Harristons fail to satisfy the first element because the Harristons fail to plead conduct that is a violation of common law. See Jarvis v. Wells Fargo Bank, N.A., No. DLB-21-687, 2022 WL 1663568, at *6 (D.Md. May 25, 2022). In this instance, Ciara Harriston alleges her injury was caused by various co-workers and supervisors' violations of federal statues prohibiting race discrimination. (Am. Compl. at 9).[11] "It is well

---

[11] The Harristons also appear to allege Defendants allowed violations of "workers compensation laws, HIP[AA] laws, [and Maryland Occupational Safety and Health (MOSH) laws]," (Am. Compl. at 12). Defendants move to dismiss these claims on the narrow ground that these statutes do not arise under the common law and are therefore insufficient to state a claim for negligent supervision. (Mot. Dismiss at 12). The Court agrees that these statutes are insufficient to state a claim for negligent supervision, but to

established that claims for negligent supervision 'are derived from the common law [and] may only be predicated on common law causes of action.'" Greenan v. Bd. of Educ. of Worcester Cnty., 783 F.Supp.2d 782, 791 (D.Md. 2011) (alteration in original) (quoting Hammond v. Taneytown Volunteer Fire Co., No. CCB–09–0746, 2009 WL 3347327, at *4 (D.Md. Oct. 13, 2009)). Specifically, to state a claim for negligent supervision, the plaintiff "must establish that her injury was caused by the tortious conduct of a coworker." Bryant v. Better Bus. Bureau of Greater Md., Inc., 923 F.Supp. 720, 751 (D.Md. 1996) (emphasis added). As Defendants acknowledge, such employment discrimination claims are not actionable under the common law in Maryland. (Mot. Dismiss at 12); Greenan, 783 F.Supp.2d at 791; Hammond, 2009 WL 3347327, at *4 ("A cause of action under § 1981 does not arise under the common law and therefore will not support a claim of negligent supervision . . . "); Abdelnaby v. Durham D & M LLC, No. GLR-14-3905, 2015 WL 3756012, at *2 (D.Md. June 15, 2015). The Court will, therefore, dismiss Count III.

### 3. Intentional Infliction of Emotional Distress

Defendants next argue that the Harristons fail to state a claim of Intentional Infliction of Emotional Distress ("IIED"). (Mot. Dismiss at 13). At bottom, the Court agrees for reasons stated below.

---

the extent the Harristons allege these claims outside of the negligent supervision context, liberally construing the Harristons' amended Complaint, as this Court must due to the Harristons' self-represented status, Weller, 901 F.2d at 391, Defendants have not moved to dismiss these claims as standalone claims, and they will accordingly survive at this stage of the litigation.

In Maryland, to sufficiently state a claim for IIED, a plaintiff must allege: (1) conduct that is "intentional or reckless"; (2) conduct that is "extreme and outrageous"; (3) "a causal connection between the wrongful conduct and the emotional distress"; and (4) emotional distress that is "severe." Takacs v. Fiore, 473 F.Supp.2d 647, 651–52 (D.Md. 2007) (quoting Harris v. Jones, 380 A.2d 611, 614 (Md. 1977)). As to the second element, the standard for "extreme and outrageous" conduct is "quite high." Tyndall v. Berlin Fire Co., No. ELH-13-02496, 2015 WL 4396529, at *34 (D.Md. July 16, 2015). The conduct must be "so outrageous in character, and so extreme in degree," that it goes "beyond all possible bounds of decency." Arsham v. Mayor of Balt., 85 F.Supp.3d 841, 850 (D.Md. 2015) (quoting Harris, 380 A.2d at 614). Put differently, the conduct must "completely violate human dignity" and "strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." Interphase Garment Sols., LLC v. Fox Television Stations, Inc., 566 F.Supp.2d 460, 466 (D.Md. 2008) (internal citation omitted).

Assuming without deciding the first element is met, the Court finds the Harristons fail to plausibly allege conduct that is "extreme and outrageous." Takacs, 473 F.Supp.2d at 651–52. Ciara Harriston complains of, among other things, a cluttered workspace; that an unnamed co-worker pushed a cart at her; that she was cut off while driving in the Target parking lot; and that she generally "faced mental and physical extreme behavior." (Am. Compl. at 20). Construing the facts in the light most favorable to the Harristons, the Court finds these facts insufficient to state a claim for IIED. In other words, "as inappropriate and repulsive as workplace harassment is, such execrable behavior almost never rises to the

level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law." Arabi v. Fred Meyers, Inc., 205 F.Supp.2d 462, 466 (D.Md. 2002).

Ciara Harriston additionally alleges she was "strangely" and "mysteriously" "kidnapped" on September 23, 2022, when an unnamed truck driver connected his vehicle to a trailer that had been serving as a makeshift storage area where she was working and drove off. (Am. Compl. at 17; Opp'n at 3). As other courts confronting similarly incredible allegations have found, "[t]o the extent that [the Harristons are] alleging that unnamed staff members at [Target] kidnapped [Ciara Harriston], without more facts, the allegation amounts to a 'naked assertion' devoid of 'further factual enhancement[,]' 'which is insufficient to survive initial review." Quinn v. People, No. 4:12-120-M, 2013 WL 1411230, at *4 (W.D.Ky. Apr. 8, 2013) (quoting Iqbal, 556 U.S. at 678). To the extent the Harristons allege that a non-Target employee kidnapped Ciara Harriston, no such individual is named in the Amended Complaint, and the named defendants cannot be held liable for that individual's actions. The Court will therefore dismiss Count V.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Partial Motion to Dismiss (ECF No. 69). The Harristons' § 1981 claims against the remaining Defendants not named as the "Pikesville Target Employees," the constructive discharge claim, the retaliation claim, the hostile work environment claim, and the HIPPA, OSHA, and workers compensation claims will survive at this stage of the litigation. The Court will also grant the Motion for Leave to file Surreply (ECF No. 88). As stated in the Court's June 6, 2024 Order (ECF No. 92), Defendants have fourteen days from the date of this Order to file a Response to the Harristons' pending Partial Motion for Summary Judgment (ECF No. 89). A separate Order follows.

Entered this 25th day of September, 2024.

>                    /s/
> George L. Russell, III
> Chief United States District Judge